UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**BLACKFOOT LAND & WATER LLC**,

Debtor.

Case No. **10-62580-11**

# MEMORANDUM of DECISION

At Butte in said District this 21st day of February, 2012.

Pending in this Chapter 11 case is whether to confirm the Trustee's Second Amended Chapter 11 Plan of Reorganization (hereinafter the "Trustee's Plan") (Docket No. 142), filed on January 6, 2012. The only objection to confirmation was filed by the Debtor's member and sole shareholder Scott G. Cooney ("Cooney"), who has filed his own plan and disclosure statement. A hearing on confirmation of the Trustee's Plan was held at Missoula on February 9, 2012. The parties appeared represented by counsel. Testimony of witnesses was heard and exhibits were admitted. At the conclusion of the parties' cases-in-chief the Court took the matter of confirmation of the Trustee's Plan under advisement. After review of the record, ballot report, and applicable law, Cooney's objection will be overruled and the Trustee's Plan will be confirmed as satisfying the requirements of 11 U.S.C. § 1129.

This Court has exclusive jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a). Confirmation of the Trustee's Plan is a core proceeding under 11 U.S.C. § 157(b)(2)(L). This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

1

The Trustee Richardson appeared and testified in support of confirmation, represented by attorney John Amsden ("Amsden"). Cooney appeared and testified, represented by attorney Gary S. Deschenes ("Deschenes"). Also testifying were real estate agent Jessie Eagen ("Eagen") and hydrologist A. Campbell Stringer ("Stringer"). Secured Creditor Treasure State Bank was represented by attorney Ben Cory. Debtor's attorney of record James A. Patten ("Patten") appeared. Exhibits ("Ex.") 1, 2, A, B, C, and D were admitted into evidence.

The ballot report reflects and the Court finds that Treasure State Bank submitted a ballot accepting the Trustee's Plan in Class 1A and 1B. CBM Collections and Adler Architects submitted ballots accepting the Plan in Class C. Cooney, the sole member of Class 4 ("Equity Security Holder"), voted to reject the Trustee's Plan. Cooney is an insider as defined at 11 U.S.C. § 101(31). Thus, the Court finds that at least one class of impaired claims has accepted the plan in satisfaction of 11 U.S.C. § 1129(a)(10)[1].

## BACKGROUND FACTS & PROCEDURAL HISTORY

Cooney is the member and 100 percent (100%) owner of the Debtor Blackfoot Land & Water LLC ("Blackfoot"). Cooney testified that he worked for years in demolition, and then began working in real estate. Cooney testified that he purchased the Bonner Company Houses ("Bonner Houses") located across the U.S. highway from Stimson Lumber Company ("Stimson") in Bonner, Montana, in January of 2008 for approximately $900,000. Cooney borrowed approximately $1.7 million from Treasure State Bank for the purchase. The purchase included 26 homes, 1 commercial building, 8.08 acres of surplus land and associated water rights from

---

[1] Section 1129(a)(10) provides that the determination of acceptance by at least one class of impaired claims be done "without including any acceptance of the plan by an insider."

Stimson. Richardson testified that the Bonner Houses were built in the 1940's and 1950's, and are small homes with from one to three bedrooms. Cooney testified that they were all slated for demolition by Stimson, and that he tore down 4 or 5. Cooney testified that the Bonner Houses are registered in the National Register of Historic Places as examples of company housing. Richardson testified that the Bonner Houses are all on septic systems. He testified that the value of the Bonner Houses and extra vacant land at the height of the real estate market was $4.2 million.

Cooney testified that the Bonner Houses receive their water from Stimson through an underground pipe which runs under the highway. The water supply is the subject of a written agreement between Stimson and Blackfoot dated January 14, 2000, by which Stimson agreed to provide water to the Bonner Houses for a fixed term. Richardson testified that the water agreement has about 2 years remaining.

Stringer testified that the water for the Bonner Houses comes from wells located on the Stimson property north of the U.S. Highway, which flows beneath the highway. There, the water main branches out into a distribution system for the individual homes.

Blackfoot filed a voluntary Chapter 11 petition on October 29, 2010, signed by Patten and by Cooney as member of Blackfoot. A corporate resolution was filed with the petition, signed by Cooney as Debtor's member, and authorizing Cooney and Patten to proceed with the case. The Debtor employed Patten as attorney, and Patten has not withdrawn and remains Debtor's attorney of record in the case. Cooney testified that he had disagreements with his attorney about water, and that his calls to counsel went unanswered.

Debtor's Schedules and Statement of Financial Affairs ("SOFA") were filed on

November 15, 2010, listing total assets of $4,426,704.44 and total debts of $1,634,802.27. Schedule A lists the Bonner Houses, which Debtor valued in the total amount of $4,294,000, all encumbered by secured claims. In addition to the houses Cooney testified that there are 8.08 acres of surplus land where Cooney proposes to drill water wells. Schedule B lists personal property with a total value of $132,704.44, including water rights (76F-116477 and 76F-116473) valued at "Debtor's best estimate" in the amount of $62,475.00.

Schedule D lists secured claims. Missoula County Treasurer is listed as having secured claims for property taxes for 2008 and 2009 for several of the houses, in the total amount of $48,326.68. Treasure State Bank is listed with a secured claim in the amount of $1,554,425.80 secured by all of the property valued at $4,294,000. Schedule E lists priority claims of mostly rental deposits totaling $21,752.50. Schedule F lists unsecured nonpriority claims in the total amount of $10,297.29.

Schedule G lists the water line easement agreement and a water supply agreement with Stimson. Cooney is listed on Schedule H as a codebtor owing to Treasure State Bank. Cooney signed the Debtor's Schedules and SOFA under penalty of perjury.

On December 8, 2010, the Debtor, U.S. Trustee, Treasure State Bank and the Montana Department of Revenue ("DOR") filed a Stipulation (Dkt. 20) to appoint a Chapter 11 Examiner. The Stipulation was approved and Shirlee G. Walker was appointed Examiner. The Examiner's Report (Dkt. 37) states conclusions on page 7, including that "Blackfoot's inability to pay its debts at the time of filing of the bankruptcy petition was the result of the $560,898.51 in cash withdrawn by Scott Cooney for his personal needs or the use of his related business," and that in the Examiner's opinion, "the net cash flow from rental operations does not appear adequate for

the Debtor to service a debt of over $1,500,000."

On February 22, 2011, the U.S. Trustee, Debtor, DOR and Treasure State Bank filed a stipulation to appoint a Chapter 11 Trustee, with the Debtor's consent. Patten signed the stipulation for the Debtor. The Court approved that stipulation. Richardson was added to the case on February 24, 2011, and he began investigating Blackfoot's transfers to Cooney.

The Trustee filed his first plan and disclosure statement on June 20, 2011. Richardson testified that he originally intended to sell 5 or 6 of the Bonner Houses to reduce the secured debt, and then refinance and pay Treasure State Bank over 5 years. The pending Trustee's Second Amended Plan was filed on January 6, 2012.

On June 23, 2011, the Trustee hired Eagen as realtor for the estate to advertise and sell at least 6 of the 27 homes of the estate at a 5% commission. Eagen had worked with Cooney as real estate agent for other properties. Eagen testified that he listed the entire Bonner Houses property, and listed 7 of the houses on the MLS system. Richardson received 3 written offers to purchase individual Bonner Houses in a range from $90,000 to $125,000. Richardson did not accept any of the offers because he did not think the buyers were aware of the potential water supply problems. He testified that Stimson did not want to continue supplying water to the Bonner Houses after the agreement expires. Richardson testified that he had Eagen get bids to supply water to the houses after the agreement with Stimson ended.

Cooney testified that the Debtor does not have a water problem, but that adding water would add significant value. The Court asked Eagen whether the water issues have been resolved, and Eagen answered "No."

The Trustee requested a claims bar date, and August 31, 2011, was fixed at the last day to

5

file a proof of claim. Treasure State Bank filed Proof of Claim No. 3 on July 28, 2011, asserting a claim in the amount of $1,666,416.76 secured by real estate, inventory, chattel, accounts and intangibles. Stimson filed Proof of Claim No. 4 on August 30, 2011 asserting a priority claim in the amount of $24,000 based on the Water Supply Agreement dated January 14, 2008[2], and an unsecured nonpriority claim in the amount of $82,000 for a total of $106,000. Missoula County Treasurer filed Proofs of Claim Nos. 5 – through – 33 asserting priority claims for property taxes.

The Trustee commenced Adversary Proceeding No. 11-00044 against Cooney and his business entities on June 30, 2011. The complaint includes Count One ("Fraudulent Transfers") based on 11 U.S.C. § 544(b)(1) and 11 U.S.C. § 548; Count Two ("Conversion"); Count Three ("Account Stated/Deposit of Corporate Funds into Personal Accounts"); Count Four ("Declaratory Relief") seeking a judgment against Cooney and other Defendants in the minimum amount of $560,898.51. Cooney filed his own Chapter 11 petition on July 12, 2011[3].

On July 20, 2011, the Trustee filed a stipulation with College Pro Painters, to resolve a disputed claim for painting services for which a lien had been filed for $70,000 and turned over for collection. The Trustee settled that claim for a $20,000 unsecured nonpriority claim, and the Court approved that settlement. Cooney objects that the claim had no merit and should not have been settled. Richardson testified that he did not think the lien was valid, but he settled it

---

[2]The Water Supply Agreement between Stimson and Blackfoot attached to Claim 4 explains that states that the buildings on the property which Blackfoot purchased from Stimson currently receive water from the Mills's distribution system (the "Water System"). Blackfoot agreed to make good faith efforts to construct, obtain permits for and operate a public water system to provide water for the property "as soon as possible after the date of this agreement."

[3]The status of Cooney's Case No. 11-61349-11 is that Cooney has been granted until February 21, 2012, to file a further amended disclosure statement, and the hearing on approval has been continued to March 8, 2012.

because it would have been a "mess to litigate."

On September 28, 2011, Camp Well Drilling & Pump Supply sent Eagen Ex. 1, a quote for a water system consisting of 9 wells, including excavation and installation. The total bid in Ex. 1 is $148,734.00, and an additional $19,080 option for road replacement. Ex. 2 is another set of bids; one from Western Montana Pumps for 9 pumps and 9 power meters for a total price of $100,350.00; a $127,412.00 bid for excavating from Grant Creek Excavating, LLC; and a bid from Jerome's Drilling Co., Inc., for 9 wells including a county permit for $50,220.00. Richardson testified that he would not go through a well approval process until he got approval from the secured creditor Treasure State Bank, and the bank refused to contribute to the water system.

Richardson testified that he would have needed approximately $2,000,000 to pay creditors in full, but because of the problems with the future water supply he was considering abandoning the property until he was contacted with an offer. He put the interested parties in touch with Treasure State Bank, and he testified that they negotiated a purchase price of $1,650,000 for the Bonner Houses, from which the property taxes and administrative fees of approximately $72,000 would be paid. Richardson testified that the prospective buyer also purchased Stimson, and that they agreed to waive payment of Stimson's claim filed in this case for $106,000.

Richardson testified that the Bank agreed to accept $1.65 million less property taxes and administrative expenses, and $75,000 would remain in the estate from which the Trustee could pay unsecured nonpriority creditors 100% of their allowed claims, plus interest. If anything is left over, Richardson testified, Treasure State Bank could recover up to the amount of its

deficiency after unsecured claims are paid in full.  Beyond that, Richardson testified, Treasure State Bank agreed to Deschenes' demand for a release for Cooney from any deficiency.

On January 3, 2012, the Trustee filed a stipulation (Dkt. 137) with the realtor Eagen. That stipulation explained how Eagen had contact with parties who wished to purchase all of the estate's real property, but that the offers would be approximately $1,200,000 which would not have been sufficient to satisfy Treasure State Bank's secured claim.  The stipulation further explained the Trustee's discovery that the water for the Bonner Houses came from Stimson's property pursuant to the terms of an executory "Water Contract" with Stimson; that the Debtor had not paid any of the payments due under the Water Contract and approximately two and a half years remained on the Water Contract, after which "no further water would be provided to the homes;" that the Water Contract "rendered sales of individual homes impossible;" that the Trustee had contacted two drilling companies to review the property and prepare bids for the construction of wells for the homes; that Treasure State Bank declined to front the costs of the water wells and no other funds were available to pay for the wells; that the Bank and Stimson agreed for the sale of the estate property to Stimson for the sum of $1,650,000 under the terms of which "the Bank will receive substantially less money than is owed on its debt."  Eagen and the Trustee resolved their dispute regarding Eagen's real estate commission and agreed that Eagen would receive a commission in the total amount of $8,250.00 and waive any other commission from the sale to Stimson.  Eagen executed the stipulation (Dkt. 137) and the Court approved it.

The Trustee filed the pending Second Amended Plan on January 6, 2012.  Richardson described the Trustee's Plan as a liquidation of assets.  The Trustee's Plan provides at page 7 Article V for the sale of the estate's real property, water rights, homes on the estate's real

8

property, and the estate's personal property in those homes, to Bonner Property Development, LLC for $1,650,000.00. From that amount all the property taxes, interest and penalty owed to Missoula County all will be paid as of the date of closing, and all of the administrative expenses and fees of the Trustee will be paid from estate funds. The closing is to take place on February 28, 2012[4].

Any deficiency in Treasure State Bank's secured claim is to be subordinated pursuant to the treatment provided in Class 1B of the Trustee's Plan, wherein the remaining sale proceeds, after payment of property taxes and administrative expenses, go first to pay all unsecured creditors in full, plus interest. Then Treasure State Bank will receive whatever remains from the $1,650,000 in sale proceeds.

Cooney is treated in Class 4 of the Trustee's Plan as impaired, and his equity interests "will not be paid unless and until all other classes of claims are paid in full with interest."

The Plan goes on to state that the proceeds of the avoidance action will be paid to unsecured claims, then to unsatisfied secured claims pro rata, and then if any assets remain to Cooney. Richardson testified that in all likelihood if the Trustee's Plan is confirmed he will abandon the avoidance action Adversary Proceeding No. 11-00044 against Cooney. Richardson testified that the estate's accountant advised him that the sale under the Trustee's Plan does not create any tax problem for the estate. Under cross examination the Trustee explained that the Trustee's Plan does not provide for competing bids because all creditors are being paid in full.

Cooney filed a pro se objection to confirmation of the Trustee's Plan on the grounds that

---

[4]The Trustee testified that the prospective buyer is conducting due diligence prior to closing

9

Debtor's attorney Patten failed to advise him in this case or to assist Cooney in preparing a competing plan of reorganization, and that Cooney has obtained bids to resolve the water issue on the property for $90,000 which would substantially increase the value of the property. Cooney testified that he still believes the Bonner Houses have a surplus value of around $4 million and he would not have consented to the appointment of a Trustee if he had known the Trustee would propose a fire sale.

    Deschenes also filed an objection to confirmation for Cooney on the grounds the Trustee undervalued the Bonner Houses leaving a deficiency claim against Cooney, and that the Trustee's Plan has a detrimental effect on Cooney's personal chapter 11 case. Deschenes' objection also objects to the Trustee's stipulation with Eagen because offers to purchase houses were rejected, and that the Trustee has not paid Erin Kunzelman for any work. Richardson testified that Kunzelman is not being paid for her work for the estate because she agreed to work without pay, with the agreement of the U.S. Trustee[5].

    Cooney's Ex. D is a proposal from AMEC Environmental and Infrastructure, Inc., to develop a water system for the Bonner Houses, prepared and signed by Stringer and dated January , 2012. The project total on Ex. D is $51,408, but Ex. D states on page 4: "These costs are preliminary estimates." Stringer is a hydrologist, and he testified that obtaining a permit for a new water system would not be difficult because the property already owns water rights. All that would be required, he testified, would be 2 new wells and a change in diversion where the water

---

[5] Richardson explained that, because of the events leading up to the appointment of the Examiner and Trustee, the U.S. Trustee objected to anyone from the Debtor being employed by the estate. According to Richardson the tenants revolted when he tried to replace Kunzelman with a property manager.

under the highway from Stimson. Stringer testified that the total cost of the new system would be approximately $93,000 to include drilling costs and well construction.

On February 8, 2012, Cooney filed a plan and disclosure statement in this case. His disclosure statement has not been approved. Debtor's amended and conditionally approved disclosure statement was finally approved at the hearing held on February 9, 2012, as noted by order filed on February 10, 2012. Cooney's plan was filed on February 8, 2012; no solicitation of acceptance or rejection of Cooney's plan (Dkt. 165) occurred, and arguably could not have occurred prior to adequate notice and approval or conditional approval of the disclosure statement pursuant to 11 U.S.C. § 1125(f).[6] Cooney's plan provides for the payment of $1,542,000.00 to Treasure State Bank, which is less than the amount of Treasure State Bank's Proof of Claim No. 3 ($1,664,416.76).

Cooney's plan states at the top of page 5 that the real estate securing Treasure State Bank's claim "will be refinanced to pay off Treasure State Bank and secure a water supply for the homes." Next Cooney's plan provides that the property taxes of $105,000 will be paid from the refinancing, as will Stimson's secured claim of $54,000. Cooney's plan proposes to pay unsecured claims through cash flow. His plan states that the refinancing would be finalized within 60 days of confirmation. The source of Cooney's refinancing is not identified in his plan or his disclosure statement. Cooney's disclosure statement states that the Debtor will have sufficient monies to service debt.

---

[6] The Court does not opine in this memorandum as to whether each competing plan filed in a case requires approval or conditional approval of a disclosure statement prior to solicitation of competing plans or whether one approved or conditionally approved disclosure statement is adequate for the solicitation of competing plans.

Cooney objects to the Trustee's Plan. He testified that he wants to block the Trustee's sale because it sells the houses for far less than their market value. Cooney testified that in his opinion the Bonner Houses have a value of around $4 million[7]. However, his valuations attached at the end of his disclosure statement put the market value of the Bonner Houses at $2,820,171.00. Eagen testified that he worked with Cooney on other properties, and that combining an appraisal with the two vacant lots brings the value of the property above $3 million. Richardson testified that because of the size and condition of the Bonner Houses they are not worth $2.6 million. Eagen testified that he did not receive any offers to purchase all of the Bonner Houses.

Cooney complained that Debtor's attorney Patten would not help him and left the Debtor without counsel. Cooney testified that the money for his plan would come from refinancing from a third party lender, which he did not identify. Under cross examination Cooney testified that he has an offer to purchase the Bonner Houses for $1.7 million.

Richardson testified that he filed his Trustee's Plan in good faith, that it satisfies the "absolute priority rule" of 11 U.S.C. § 1129(b)(2)(B)(ii), and that all fees due and owing to the U.S. Trustee will be paid under his Plan. Richardson testified that if his Trustee's Plan is confirmed Treasure State Bank has agreed to waive any deficiency against Cooney, and that the Trustee's Plan would benefit Cooney because it would result in forgiveness of the debt Cooney incurred when he removed the $560,000 from this estate. Under cross examination Richardson testified that he would not proceed with Adversary Proceeding 11-00044 against Cooney.

Richardson testified that if the Trustee's Plan is not confirmed, Richardson testified, he

---

[7]Cooney's Ex. A, B, and C are comparable sales of houses with wells.

would be left in a situation in which the Bonner Houses are not saleable because of the potential loss of water. If the estate property is sold to a different buyer, he would need between $2.1 million and $2.2 million to pay the claims and repair the water system. Under the Trustee's Plan, Richardson testified, because the buyer already owns Stimson, the estate would no longer be threatened with a cutoff of water from Stimson. Water would not be an issue.

## DISCUSSION

The Court begins by clarifying that the Court is not deciding between competing plans. Only the Trustee's Plan is accompanied by an approved disclosure statement, for which acceptance or rejection has been solicited under 11 U.S.C. § 1125(b). Cooney's disclosure statement has not been approved, and therefore solicitation of acceptance or rejection from holders of claims or interests has not been authorized.

All ballots submitted by creditors have accepted the Trustee's Plan. Cooney is an insider. The Trustee's Plan has been accepted by at least one class of claims that is impaired under the Plan in satisfaction of 11 U.S.C. § 1129(a)(10).

Next, the Court finds no relevance in Cooney's testimony that he received no help from the Debtor's attorney of record. As the Debtor's 100% shareholder, Cooney voluntarily selected Patten as the Debtor's attorney of record, and the Debtor cannot now avoid the consequences of the acts or omissions of its freely-selected attorney. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993); *Link v. Wabash Co.*, 370 U.S. 626, 633-34 (1962).

Based on the Trustee's testimony, the Court finds that the Trustee's Plan has been proposed in good faith and not by any means forbidden by law in satisfaction of 11 U.S.C. §

13

1129(a)(3). The evidence shows that each class of creditors has accepted the Plan, and because Treasure State Bank agreed to subordinate its deficiency claim the class of unsecured claims will be paid in full, with interest. With respect to creditors then, the Court finds that the Trustee's Plan is fair and equitable and satisfies 11 U.S.C. § 1129(b)(2)(A) and (B). Finally, the Court finds that, with the purchaser owning the water supply system, and closing to take place on February 28, 2012, the Trustee has satisfied the feasibility requirement of 11 U.S.C. § 1129(a)(11), and confirmation is not likely to be followed by liquidation or the need for further financial reorganization beyond that provided in the Trustee's Plan.

With respect to Cooney it is clear to the Court, if not to Cooney, that confirmation of the Trustee's Plan results in significant relief to Cooney. In that event, the evidence shows that Treasure State Bank will waive its deficiency claim against Cooney for any unpaid portion of its secured claim. In addition the Trustee testified that he will not pursue Adversary Proceeding No. 11-00040 against Cooney, relieving him of the burdens of time and expense otherwise required to defend, and the risk of liability. Under the Trustee's Plan the water supply problem is resolved, where under Cooney's plan a significant expenditure of funds would be required to pay for the new wells, and Cooney presented no source of such funds. The Trustee's purchaser agreed to waive payment of Stimson's claim filed in this case for $106,000.

Cooney's main objection to the Trustee's Plan is that it sells the Bonner Houses for too little. He argues that there is $4 million in value in the property. However, he purchased the property in January 2008 for $900,000, and he testified that he tore some of the houses down. Cooney failed to explain how, in the midst of the worst real estate market in years, the value of the Bonner Homes increased from $900,000 in 2008 to $4 million. Cooney admitted that his

unidentified purchaser offers $1.7 million under his plan, a mere $50,000 more than the $1.65 million sale proposed under the Trustee's Plan.

Given the full satisfaction of creditors' claims under the Trustee's Plan, the Court does not consider this a close call. The Court finds and concludes, based on the testimony and exhibits, and the record in this case, that the Trustee's Plan is sufficiently funded to pay creditors as provided therein, and that the Plan is feasible, fair and equitable, and satisfies all requirements for confirmation under 11 U.S.C. § 1129.

**IT IS ORDERED** a separate Order shall be entered overruling Cooney's objections and confirming the Trustee's Second Amended Plan (Dkt. 142).

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana